IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| CATHY CORTINA ARVIZU | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CIVIL ACTION NO. |
| | § | 3:24-CV-02152 |
| CITY OF DALLAS, Texas, City of Dallas, Texas | § | |
| Chad West, in his individual capacity and as City | § | |
| of Dallas Council Member, District 1, Jesse | § | |
| Moreno, in his individual capacity as City of | § | |
| Dallas Council Member, District 2, Zarin D. | § | |
| Gracey, in his individual capacity as City of Dallas | § | |
| Council Member, District 3, Carolyn King Arnold, | § | |
| in her individual capacity as City of Dallas | § | |
| Council Member, District 4, Jaime Resendez, | § | |
| in his individual capacity as City of Dallas | § | |
| Council Member, District 5, Omar Narvaez, in | § | |
| his individual capacity as City of Dallas Council | § | |
| Member, District 6, Adam Bazaldua, in his | § | |
| individual capacity as City of Dallas Council | § | |
| Member, District 7, Tennell Atkins, in his | § | |
| individual capacity as City of Dallas Council | § | |
| Member, District 8, Paula Blackmon, in her | § | |
| individual capacity as City of Dallas Council | § | |
| Member, District 9, Kathy Stewart, in her | § | |
| individual capacity as City of Dallas Council | § | |
| Member, District 10, Jaynie Schultz, in her | § | |
| individual capacity as City of Dallas Council | § | |
| Member, District 11, Gay Donnell Willis | § | |
| in her individual capacity as City of Dallas | § | |

Council Member, District 13, Paul E. Ridley in          §
his individual capacity as City of Dallas Council        §
Member, District 14.                                     §
    Defendants.                       §

## COMPLAINT

   Plaintiff alleges that:

1.    This action is brought pursuant to 52 U.S.C. § 10301 and 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by federal statute and the Constitution of the United States. Plaintiff also brings this action pursuant to § 2 of the Voting Rights Act of 1965, as amended, 52 U.S.C. §10301, to enforce rights guaranteed by the United States Constitution.

## JURISDICTION

2.    This Court has jurisdiction over the subject matter of this action pursuant to 52 U.S.C. §10301. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as a case arising under the laws of the United States; and under 28 U.S.C. § 1343(a)(4), as a case seeking equitable and other relief pursuant to an act of Congress providing for the protection of the right to vote. This Court also has authority to issue a declaratory judgment and provide for further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

3.    Plaintiff **CATHY CORTINA ARVIZU** is a voter, and resident of Dallas

Texas, and is affected by the discriminatory conduct alleged in this complaint.

4.      Defendant **CITY OF DALLAS, TEXAS**, is a political subdivision of the State of Texas.

5.      Defendant **CHAD WEST**, in his individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 1** is duly elected to the City Council for City of Dallas, Texas, and is being sued in his individual capacity.

6.      Defendant **JESSE MORENO**, in his individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 2** is duly elected to the City Council for City of Dallas, Texas, and is being sued in his individual capacity.

7.      Defendant **ZARIN D. GRACEY**, in his individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 3** is duly elected to the City Council for City of Dallas, Texas, and is being sued in his individual capacity.

8.      Defendant **CAROLYN KING ARNOLD**, in her individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 4** is duly elected to the City Council for City of Dallas, Texas, and is being sued in her individual capacity.

9.     Defendant **JAIME RESENDEZ**, in his individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 5** is duly elected to the City Council for City of Dallas, Texas, and is being sued in his individual capacity.

10.    Defendant **OMAR NARVAEZ**, in his individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 6** is duly elected to the City Council for City of Dallas, Texas, and is being sued in his individual capacity.

11.    Defendant **ADAM BAZALDUA**, in his individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 7** is duly elected to the City Council for City of Dallas, Texas, and is being sued in his individual capacity.

12.    Defendant **TENNELL ATKINS**, in his individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 8** is duly elected to the City Council for City of Dallas, Texas, and is being sued in his individual capacity.

13.    Defendant **PAULA BLACKMON**, in her individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 9** is duly elected to the City Council for City of Dallas, Texas, and is being sued in her individual

capacity.

14.    Defendant **KATHY STEWART**, in her individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 10** is duly elected to the City Council for City of Dallas, Texas, and is being sued in her individual capacity.

15.    Defendant **JAYNIE SCHULTZ**, in her individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 11** is duly elected to the City Council for City of Dallas, Texas, and is being sued in her individual capacity.

16.    Defendant **GAY DONNELL WILLIS**, in her individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 13** is duly elected to the City Council for City of Dallas, Texas, and is being sued in her individual capacity.

17.    Defendant **PAUL E. RIDLEY**, in his individual capacity and as City of Dallas **COUNCIL MEMBER, DISTRICT 14** is duly elected to the City Council for City of Dallas, Texas, and is being sued in his individual capacity.

## **ALLEGATIONS**

18.    This case is about deliberate and intentional governmental interference with the election process by manipulating ballot language which disproportionately affects members of protected classes, including minority and women voters resulting in a higher rejection rate of votes from minority citizens compared to Anglo citizens. Consequently, this action discriminates against African-American and Latino citizens, violating Section 2 of the Voting Rights Act of 1965, as amended (52 U.S.C. §§ 10301 and 10304). This case is also about governmental actors manipulating ballots in ways designed to mislead, confuse and deprive citizens of their right to vote.

19.    The Dallas City Council does not hide its disdain for these rights, and its open intent to thwart the exercise of these rights by its residents. Dallas Council Member Paula Blackmon's declaration at the August 14, 2024, City Council Meeting exemplifies the City's position, "We further believe that these voter-led amendments do not reflect the way Dallas should operate or make policy for its citizens." Dallas City Council Agenda Meeting, (2024, August 14) *Item #90* [08:24:40] https://dallastx.new.swagit.com/videos/312377

20.    The petitioned city charter amendments at issue in this case were inspired by alarming actions of the Dallas City Council that include its refusal to prioritize public safety, which has become a leading concern for Dallas residents based on

recent polls. At the same time, the City of Dallas has diverted attention away from the City's core mission of providing basic city services, while refusing to follow its own charter, ordinances, and even state laws. The City of Dallas conducted a Dallas Community Survey of its residents. The survey results from 2023 and 2024 clearly show a deep disconnect between residents' top concerns and the City's policy agenda. Dallas HERO, a grassroots organization, without running a single political advertisement and very little other promotion, collected tens upon tens of thousands of signatures from a diverse group of petition signers from all parts of Dallas who all share a desire to address these pressing issues.

21.    Considering the abysmal public safety record of the City of Dallas and to send the City Council a message, more than 169,000 eligible Dallas voters signed three petitions for charter amendments, clearly in support of public safety, good government and greater accountability to residents. The first, to prioritize an appropriation of year over year City revenue increases for specific public safety objectives, including funding the Dallas Police and Fire Pension System by increasing the number of sworn police officers and ensuring their pay is competitive. The second, to compel the City to conduct the City commissioned Community Survey on an annual basis, and based upon the results of said survey, provide direct accountability of the City Manager to the residents of Dallas, including an opportunity to earn performance compensation.  The third, to grant

standing to any resident of Dallas to bring an action against the City for it to comply with the City Charter, City ordinances, and state law and waiving the City's governmental immunity for such enforcement actions. Dallas HERO led the collection of petition signatures, and Plaintiff Cathy Cortina Arvizu signed all three petitions. See Dallas HERO Petitions with the Proposed Ballot Language attached hereto and incorporated by reference as Exhibit "A".

22.    On June 18, 2024, the City Secretary, in accordance with the Texas Local Government Code § 9.004(a), received three separate petitions proposing amendments to the Dallas City Charter. On July 19, 2024, the City Secretary found that the three petitions were supported by the required number of qualified voters of the City of Dallas in accordance with Texas Local Government Code § 9.004(a) using the statistical sample method for verifying Ordinance signatures on all three petitions as allowed by Texas Election Code § 277.003. See City Certifications attached hereto and incorporated by reference as Exhibit "B".

23.    On August 7, 2024, the City of Dallas held a city council meeting at which several council members expressed outrage that citizens would exercise their rights to direct popular participation in lawmaking. Council Member Carolyn King Arnold for example stated, "If it was left up to me, no one from the outside of this city limits would be able to come here, speak to us, and tell us how to run the

business of the City of Dallas." Dallas City Council Briefing, (2024, August 7) [4:22:18] https://dallastx.new.swagit.com/videos/311751. Councilwoman Arnold, after being publicly advised by the City Attorney of her ministerial duty to put the citizen-led charter amendment propositions on the ballot, escalated her unbridled intent to "counteract" the Dallas HERO propositions by asking, "How will we get our message out? Do we use City funds, or do we have to have the partnership to help us with a campaign, or is it legal to do that?" Dallas City Council Briefing, (2024, August 7) [3:50:23] https://dallastx.new.swagit.com/videos/311751.

24.    On August 8, 2024, Dallas HERO Executive Director Pete Marocco sent a letter to the Dallas City Attorney regarding reports that several members of the Dallas City Council were "conducting secret meetings in an effort to unlawfully alter the ballot language" to undermine the prospects of passage of the Dallas HERO charter amendments. See Letter dated August 8, 2024, from Dallas HERO Executive Director Pete Marocco to Dallas City Council, attached hereto and incorporated by reference as Exhibit "C".

25.    On August 9, 2024, the Dallas City Clerk posted an agenda on the City's website for the upcoming August 14, 2024, City Council meeting that included the proposed ordinance calling an election to place the Dallas HERO charter amendments on the ballot for the November 5, 2024 election. The ballot language

for each of the three Dallas HERO charter amendments were indeed modified from what the petitioners requested on their petitions in a grossly misleading manner, designed to confuse voters and misstate the purpose of the propositions.  See City Ordinance dated August 9, 2024, attached hereto and incorporated by reference as Exhibit "D".

26.    On August 12, 2024, attorneys for Dallas HERO sent a letter to the Mayor of Dallas and Dallas City Council members advising them of the legal standards established by the Texas Supreme Court regarding altered ballot language: *In re Morris,* 663 S.W.3d 589, 597-98 (Tex. 2023) and *In re Petricek*, 629 S.W.3d 913 (Tex. 2021), as well as, potential violations of 42 U.S.C. § 1983, which prohibits public officials from violating the constitutional rights of any person, as well as, the Voting Rights Act, 52 U.S.C. § 10307(b), which prohibits interfering with the right to vote of any person. See Letter dated August 12, 2024, from Dallas HERO Attorneys to the Mayor of Dallas and Dallas City Council members, attached hereto and incorporated by reference as Appendix Exhibit "E".

27.    On August 14, 2024, the City of Dallas met in a marathon session to discuss the Dallas HERO circulated city charter amendments, as well as city charter amendments recommended by its own City Charter Commission. At that meeting, the parties met to address the City's misleading ballot language. The parties

reluctantly agreed to changes to lessen the effect of the aforementioned misleading ballot language on voters. The result was more accurate than the City's previous proposed language, but still unnecessarily technical and lengthy for each of the three proposed charter amendments. See Rule 11 Agreement email string between Dallas HERO Attorneys and City of Dallas City Attorney's office dated August 14, 2024, attached hereto and incorporated by reference as Exhibit "F".

28.    After the execution of the Rule 11 agreement regarding ballot language, Council Member Omar Narvaez made a motion to add a new proposed charter amendment without any recommendation from the Dallas City Charter Commission or any prior discussion at any public meeting. The motion was to make any allocation of funds and wages required in the City Charter only a recommendation, "I move to amend the ordinance by adding a proposition, adding provisions, stating that City council shall make the final determinations regarding appropriations of city funds. And that any instructions in the charter regarding the appropriation of city funds for city employee wages serve only as recommendations for City Council's consideration and that these provisions control over other provisions in the City Charter." This amendment is directly designed to neuter the salary requirements in Dallas HERO's City Manager amendment and Dallas HERO's police and fire staffing amendment. Council Member Narvaez then awkwardly attempted to explain his contrived 'spontaneous' motion drafted by

some unknown person, "all I wanna say is, um, I thought of this, you know, it's not, it's a little, it, we needed some clarifying language in our Charter when it comes to this and, um, it was something that I noticed at the very last minute and, um, want to thank folks for, you know, that helped me out and try to figure that out. 'Cause you know, you start reading things and it's like, it was ambiguous, so this clears. I think this will clear up, um, what we're supposed to do in that, um, in that, in that chapter." No other member of the Dallas City Council had any questions or discussion due to the novel and unexpected introduction of the motion, to its passing in two minutes. Dallas City Council Agenda Meeting, (2024, August 14) [3:33:29]

https://dallastx.new.swagit.com/videos/312377

29.    Another motion was made by Council Member Adam Bazaldua, Deputy Mayor Pro Tem, to add a new Charter Amendment, stating that no waiver of governmental immunity shall be allowed. "I move to amend the ordinance by adding, adding a proposition that adds a section to chapter three, stating that nothing in the City charter is intended to waive the City's governmental immunity from suit liability or damages, or to grant standing to residents to bring suit against the City, its employees or officials." This too is directly designed to neuter the Dallas HERO charter amendment on Citizen Enforcement. The only statement made by the movant was that it is a restatement of current law, "um, I believe that, uh, governmental immunity is something that is already practiced and we, um, uh, uh,

should absolutely, um, uh, support, um, a, a practice that already exists." No other member of the Dallas City Council had any questions or discussion due to the novel and unexpected introduction of the motion, to its passing in two minutes. Dallas City Council Agenda Meeting, (2024, August 14) [4:18:15] https://dallastx.new.swagit.com/videos/312377.

30.    Councilmember Gay Donnell Willis then made the following cryptic motion, "I move to amend the ordinance by adding a proposition that adds a provision that states that the appointment removal and compensation language in chapter six, section one of the City charter controls over any other conflicting provision of the City charter." No discussion or explanation was made by any member of the City Council or Staff, not even the Movant Council Member Willis. Chapter VI, Section 1 of the City Charter deals with the City Manager's compensation and is designed to nullify the performance compensation requirements in Dallas HERO's City Manager amendment, Dallas City Council Agenda Meeting, (2024, August 14) [5:54:30] https://dallastx.new.swagit.com/videos/312377.

31.    With votes of 10-5, 13-2 and 11-4, these three unnoticed charter amendments were adopted for the purpose of grossly misleading voters, an exercise of discretion the City of Dallas does not legally have. All three unnoticed charter amendments were adopted without discussion or debate by the City Council and were the only

ones not debated that evening, raising concerns of possible Texas Open Meetings Act violations.

32.     This grotesque action by the City Council was a desperate last-minute attempt to introduce separate ballot propositions designed and written to confuse, mislead, and disenfranchise the City of Dallas voters. The language chosen, especially the amendment introduced by Councilmember Willis, is intended to obscure the true effect of the petitioned proposed charter amendment.

33.     In addition, the City continues its desperate attempt to mislead voters by delaying the posting of the ordinance approving the final ballot language and numbering the City's misleading propositions in a higher order on the ballot to ensure the voters first see the City's misleading propositions and undervote on the voters' propositions which are lower on the ballot. The City's actions of delay and "hide the ball" antics are just a component of its overall scheme, which is to push any challenges closer to the time permitted to print the ballots to avoid timely review by the Court and to cause more confusion by placing its propositions higher on the ballot to ensure even more confusion to mislead the voters of Dallas, namely, that the Charter is merely a "recommendation" with no authority.

34.     The City's last-minute proposition additions were specifically targeted to directly counter the petitioned propositions. In this case, the ballot propositions'

subject matter and language are misleading, both in and of themselves and in comparison to one another, and fail to give fair notice to a voter of average intelligence by directing them to the amendment so that they can discern its identity and distinguish it from other propositions on the ballot.

35.    This direct act of ballot manipulation is in the same vein as other unconstitutional government measures such as poll taxes, literacy tests, all-white primaries, felony disenfranchisement laws, grandfather clauses, fraud and other forms of intimidation designed to keep minority voters from freely participating in our democracy.

36.    The majority of the petition signers are members of protected classes, minority and women voters, and manipulating the ballot was intended to interfere with and deprive the petition signers of their First Amendment rights to petition the Government for redress. The City Council intended to mislead and cause confusion among voters, diminish the ability of voters to discern and distinguish the City's propositions from other propositions on the ballot, and nullify the will of voters. Such actions constitute violations of the signatories' civil rights under 42 U.S.C. § 1983, which prohibits any public official from violating the constitutional rights of any person, as well as the Voting Rights Act, 52 U.S.C. § 10307(b), which prohibits interfering with the right to vote of any person.

## FIRST CAUSE OF ACTION

### Defendants Have Violated § 2 of the Voting Rights Act

37.    Plaintiff hereby alleges and incorporates by reference paragraphs 1 through 36, above.

38.    On August 14, 2024, the Dallas City Council prescribed its own ballot propositions for city charter amendments with misleading language designed to interfere with and deprive the petition signers of their First Amendment right to petition the Government for redress. The City Council intended to mislead and cause confusion among voters, diminish the ability of voters to discern and distinguish the City's new propositions from other propositions on the ballot, and nullify the will of voters should any of the Dallas HERO proposed charter amendments pass.

39.    The alteration and interference of the ballot disproportionately affects the petition signers, who are predominantly members of protected classes, including minority and women voters. This change results in a higher rejection rate of votes from minority citizens compared to Anglo citizens. Consequently, this action discriminates against African-American and Latino citizens, violating Section 2 of the Voting Rights Act of 1965, as amended (52 U.S.C. §§ 10301 and 10304).

## SECOND CAUSE OF ACTION

**Defendants Have Violated the Fourteenth Amendment to the United States Constitution**

40.    Plaintiff hereby alleges and incorporates by reference paragraphs 1 through 39, above.

41.    Defendants' actions, as described in paragraphs above, were undertaken with a racially discriminatory intent to deny or abridge the right to vote of African-Americans and Latinos in violation of the Fourteenth Amendment to the United States Constitution.


**THIRD CAUSE OF ACTION**

**Defendants Have Violated Plaintiff's First Amendment Right of Free Speech**

42.    Plaintiff hereby alleges and incorporates by reference paragraphs 1 through 41, above.

43.    Voting is a fundamental right under the United States Constitution and is core speech under the First Amendment.

44.    The First Amendment prohibits laws and actions that deny or abridge freedom of speech, including the right to vote. Deprivation of the right to vote is the type of harm that the First Amendment was intended in part to protect against. In general, the government may not restrict expression because of its message,

ideas, subject matter, or content. Inherently expressive acts involving political speech are protected by the First Amendment. Although state and local governments may enact reasonable and not unduly burdensome time, place, and manner regulations related to the electoral process, state and local governments may not enact election laws that discriminate on the basis of content, or the viewpoint expressed by election activities or that are not narrowly tailored to a compelling state interest.

45.     Defendants have instituted practices and policies by changing ballot language to confuse or mislead voters. These actions effectively deny or abridge the Plaintiffs' right to exercise their First Amendment right to vote. By manipulating the ballot language, Defendants are interfering with the clear and unambiguous expression of voter intent, thus infringing upon a fundamental aspect of free speech in democratic participation.

## FOURTH CAUSE OF ACTION

## Defendants Have Violated Plaintiff's First Amendment Rights to Petition the Government for Redress

46.     Plaintiff hereby alleges and incorporates by reference paragraphs 1 through 45, above.

47.     The right to petition the government for redress is a fundamental right under

the United States Constitution under the First Amendment.

48.     The First Amendment prohibits laws and actions that deny or abridge the right to petition the government for redress. Manipulating the ballot in a manner designed to confuse voters and nullify the outcome of a successful petition campaign is the type of harm that the First Amendment was intended in part to protect against.

49.     This direct act of ballot manipulation is in the same vein as other unconstitutional government measures such as poll taxes, literacy tests, all-white primaries, felony disenfranchisement laws, grandfather clauses, fraud and other forms of intimidation designed to keep minority voters from freely participating in our democracy.

50.     The City's actions effectively deny or abridge the Plaintiff's exercise of her First Amendment right to petition the Government for redress by filing a petition to place the Dallas HERO proposed city charter amendments on the ballot for public vote. By manipulating the ballot, Defendants are interfering with the clear and unambiguous expression of the petitioners' intent, thus infringing upon a fundamental aspect of democratic participation by petitioning the government for redress.

**REQUEST FOR THREEJUDGE PANEL**

51.    Plaintiff requests a three-judge trial court pursuant to 28 U.S.C. § 2284.

## ATTORNEYS FEES

52.       Plaintiff is entitled to all costs and disbursements in maintaining this action, and all reasonable attorneys' fees, pursuant to 52 U.S.C. §10310(e) and 42 U.S.C. §1988.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays that the court:

(1) Assume jurisdiction of this action and request a three-judge panel pursuant to 28 U.S.C. § 2284;

(2)Granting Plaintiff a preliminary and permanent injunction against Defendants, their officers, agents, servants, employees, attorneys and those persons acting in concert or participation with them from changing the ballot by adding nullifying counter-propositions with misleading language;

(3) Granting Plaintiff a preliminary and permanent injunction against Defendants, their officers, agents, servants, employees, attorneys and those persons acting in concert or participation with them from certifying and printing the ballot until the court has made a final ruling on this case;

(4) Declaring that changing the ballot, in the manner identified in

paragraphs above, violates § 2 of the Voting Rights Act, as amended, 52 U.S.C. §10301.

(5) Declaring Defendants' actions as described in this complaint violate the First and Fourteenth Amendments to the United States Constitution.

(6) Granting Plaintiff a preliminary and permanent injunction under § 2 of the Voting Rights Act and the United States Constitution against Defendants, their officers, agents, servants, employees, and attorneys, and those persons acting in concert or participation with them, from continued implementation of the procedures and policies identified in this complaint;

(7) Damages both economic and non-economic aforementioned in an amount within the jurisdictional limits of the Court;

(8) Pre-judgment and post-judgment interest at the maximum rate allowed by law;

(9) Costs of court;

(10) Exemplary damages;

(11) Consequential damages;

(12) Attorney's fees,

(13) Awarding Plaintiff all costs and disbursements in maintaining this action, and all reasonable attorneys' fees, pursuant to 52 U.S.C §10310(e) and 42 U.S.C. §1988 and

(14) Award such further relief, both special and general, legal and equitable, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

THE MARTINEZ DE VARA
LAW FIRM, PLLC
PO BOX 377
Von Ormy, TX 78073
(210) 622-0323
(210) 622-4021

By: /s/: Adrian A. Spears, II
ART MARTINEZ DE VARA
State Bar No. 24060230
martinezdevara@gmail.com
ADRIAN A. SPEARS II
State Bar No. 24049318
adrian@sierraspears.com
CHARLES H. SIERRA
State Bar No. 18345300
charles@sierraspears.com

**ATTORNEYS FOR PLAINTIFF**